Moncure, P.,
delivered the opinion of the court. After stating the case he proceeded s
The first decree complained of in the first of the said two appeals is the decree of the 25th day of April, 1874, in which ccthe court, being of opinion that the social assets of the late firm of Shackelford & Spilman should be first applied to the discharge and satisfaction of the debts of said firm, and that the petitioner hath a right to have them so applied, and that the same are not protected by the surety of said J. C. Gibson, administrator d. b. n. w. w. a. of B. H, Shackelford, deceased, in his bond as such ad- *502 m^n*strat°r j the said surety having only a life estate, as it appears to the court, in any property owned and held by that the petitioner hath aright to have said assets secured f°r the purpose of discharging the debts and- liabilities of said firm”—decreed that said J. C.'Gibson be appointed a receiver of the social assets and property of S£hd firm °f Shackelford & Spilman; and that said Gibson, administrator as aforesaid, forthwith deliver to said receiver “all the choses in action, evidences of debt, moneys in his hands, property and assets, written papers or memoranda belonging to said firm of Shackelford & Spilman, and all the account books and other books,” &c.,. “ kept by or belonging to said firm and pertaining to their business, whether kept during the existence of said firm,, or by B. H. Shackelford since its dissolution, or by his personal representatives since his death.” But said receiver,, before receiving any thing as such, was required by said decree to execute bond, with surety as therein mentioned, for the faithful discharge of his duties as such; and he was directed to file among the papers in the cause a statement of all the assets he might receive under said decree,, and to proceed to make collections, &c., and to present an account thereof to a commissioner of the court. And the court further ordered that a commissioner should take an account, as therein directed, of the debts due by said firm and the priorities thereof; that reports should be made to-the court by said receiver and commissioner respectively,, and that no payments of any funds, &c., be made by said receiver, except under the order of the court.
The main question presented by or raised upon the said decree is, whether that part of the estate of B. H. Shackelford, deceased, which was a part of the partnership estate of the late firm of Shackelford & Spilman, is first liable to the payment of the debts of the said firm before it is liable to the payment of the individual debts of the said B. H. Shackelford.
*503 We know that, ordinarily, a partnership estate is liable to the payment of the debts of the firm in preference of the individual debts of the partners. This is the right the partners inter se. The creditors of the partnership have no such right of priority over the creditors of the partners individually, but only by substitution to the rights of the partners inter se. The partners may release this right, and the creditors of the partnership cannot complain, for it is not their right, except subject to the disposition and control of the partners theipselves, to whom it belongs.
When one partner sells to another the former’s interest in the partnership estate, the question whether the former has a right, after the sale, to require the partnership estate to be applied to the payment of the partnership debts in his exoneration, depends upon the true intent and meaning of the contract of sale in that respect. It is competent, of course, for a vendor in such a case to release the partnership estate from such a continuing liability. But whether he did so in fact or not is a question which depends upon the intention of the parties in the contract of sale in the particular case.
Whether, in the case of such a sale, where there is a total absence of anything in the contract of sale to indicate the intention of the parties on the subject, the presumption of law is in favor of or against such continuing liability, is a question which need not be decided in this case, if it appear by the terms of the contract of sale in the case that such a continuing liability was actually intended by the parties. If so, it will certainly continue to exist.
Let us now therefore enquire : whether, by the terms of the contract of sale in this case, such a continuing liability was actually intended by the parties ?
The said contract of sale by Spilman to Shackelford was by deed executed by the parties on the 21st day of Decern *504 her, 1869, only a few months before the death of the ven- ' ' ^ dee, Shackelford; the vendor, Spilman, being his survivor, then still living. The only clauses of the contract wbich seem to be material to the question we are now considering are the following :
“ That the said Shackelford agrees to take the entire asS6^S ^aw ®rm Shackelford & Spilman, except the real estate belonging to said firm in the state of Arkansas, and pay off and discharge all the debts of said firm of every nature and deseription, upon the following terms, stipulations and agreements : The said Shackelford agrees to wind up all the' business of said firm, applying the assets, as fast as realized, to the payment of its debts, all of .which he assumes to pay, hereby discharging said Spilman from all liability for the same; the surplus remaining, after the payment of said debts, to belong exclusively to the said Shackelford.”
“ The said Shackelford will keep au account of all receipts and disbursements by him on the books of the late firm; so that the said Spilman may, at any time, know the condition of said business, should its settlement be, by any accident, devolved on him ; and the said Shackelford has the right to call on said Spilman for assistance and explanation in regard to any of the business of said firm that he may find himself unable to settle.”
Thus we see, the contract of said Shackelford was to discharge all the debts of said firm, of every nature and description, upon the following terms: “ The said Shackelford agrees to wind up all the business of said firm, applying the assets, as fast as realized, to the payment of its debts, all of which he assumes to pay, hereby discharging said Spilman from all liability for the same; the surplus remaining, after, the payment of said debts, to belong exclusively to the said Shackelford.”
The said Shackelford was thus declared to be a trustee of the partnership estate, which is of course a trust, estate *505 for the payment of the debts of the partnership, the assets of which, as fast as realized, were to be applied by said trustee to such payment; and only “ the surplus remaining, after the payment of said debts, to belong exclusively to the said Shackelford.” And it was expressly agreed that “ the said Shackelford will keep an account of all receipts and disbursements by him, on the books of the late firm; so that the said Spilman may, at any time, know the condition of said business, should its settlement be, by any accident, devolved on him; and the said Shackelford has the right to call on said Spilman for assistance and explanation in regard to any of the business of said firm that he may find himself unable to settle.” . The partnership was thus, in effect, continued until, and for the purpose of, the winding up of the concern. And the lien of the vendor, Spilman, on the partnership estate, for the payment of the debts of the partnershiD, which lien resulted from the existence of the partnership, was continued and preserved to him until the business of the firm should be fully settled; until which event and for which purpose the partnership will, in effect, continue in existence.
It follows, therefore, from what has been said, that that part of the estate of B. H. Shackelford, deceased, which was a part of the partnership estate of the late firm of Shackelford & Spilmau, is first liable to the payment of the debts of said firm, before it is liable to the individual debts of said B. H. Shackelford.
The court, without considering in detail the other objections taken to the said decree of the 25th day of April, 1874, in the appellant’s assignment of errors, is of opin- ■ ion and doth determine that the said objections are groundless and be overruled, and that there is no error in the said decree, and, therefore, that the said decree be affirmed.
The second decree complained of in the first of the said two appeals is, the decree of December term of said court, *506 whereby the petition of the appellant, J. C. Gibson, administrator d. b. n. w. w. a. of B. H. Shackelford, of Rebecca B. Shackelford, widow of said B. EL Shackelford, for the review and reversal of the said decree of 7 the 25th of Aprd, 1874, was dismissed.
The court is of opinion, that for the same reasons for which the said circuit court did not err in making the said decree of the 25th day of April, 1874, as aforesaid, it did not err in dismissing the said petition for the review and reversal of the said decree.
The third decree complained of is, that of the 24th day of December, 1875; by which sundry exceptions taken to the report of Commissioner Shepperd, filed in the case of “Gibson v. Shackelford,” on the24th of August, 1875, were overruled. Sundry other exceptions taken to said report were recommitted to said commissioner, who was directed also to make certain enquiries; but as those portions of the decree decide nothing, it will be unnecessary to notice them here, and only necessary to notice so much of said decree as overrules exceptions to said report. The said overruled exceptions are the 1st, 2d, 3d, 4th, the 5th in part, the 6th, 7th, 8th, 9th, 10th and 14th, taken to the said report by the appellant, and the 1st taken thereto by Thos. N. Latham. The said exceptions taken by the appellants are as follows:
“ 1st. Said commissioner in said report undertakes to sever what were. formerly the assets of the late firm of Shackelford & Spilman, from the assets of the estate of the testator, and to hold the same liable to the creditors of said late firm, to the exclusion of the creditors of said B. H. Shackelford.”
The court did not err in overruling this exception, for the plain reason that the partnership estate of Shackelford & Spilman was liable to the payment of the' partnership debts of that firm, before it was liable to the payment of the individual debts of said Shackelford, as has already been shown.
*507 “ 2d. Said commissioner reports that in all cases in which debts and liabilities incurred and contracted by E. M. Spilman, a former member of the firm of Shackelford & Spilman, and the consideration for said debts and liabilities, were charged upon the books of said late firm to the said firm; that such entries converted said debts and liabilities into firm debts.”
The court did not err in overruling this exception. The books of the firm were evidence against the firm; and were conclusive, in the absence of evidence to the contrary.
“ 3d. Because said commissioner reports, that the estate of B. H. Shackelford, deceased, is debtor to the late firm of Shackelford & Spilman for the amount of all assets of said late firm collected by the said B. H. Shackelford during his lifetime.”
The court plainly did not err in overruling this exception.
“ 4th. Because said commissioner reports that the social creditors of the late firm of Shackelford & Spilman have a lien on what were formerly the social assets of said late firm, to the exclusion of the individual creditors of B. H. Shackelford, deceased, notwithstanding E. M. Spilman, one of the members of said firm, for valuable consideration already received in full, sold and assigned to B. H. Shackelford, deceased, the other member of the firm, during his lifetime, all the assets of said late firm, except the Arkansas land.”
The correctness of the decision of the court in overruling this exception is conclusively sustained by the reasons already assigned in support of the correctness of the decree of the 25th day of April, 1874.
“ 5th. Because said commissioner, in said report, insists upon charging the administrator d. b. n. c. t. a. of B. H. Shackelford with all sums received by H. B. Garden, the attorney at law of said administrator, whether the same *508 were paid over to said administrator by his said attorney at law or not, and insists upon crediting said administrator with all payments and disbursements made by the said attorney, whether made with or without the authority of the said administrator. This exceptant denies that he is liable for any money collected by his said attorney at law, unless the same was paid over to him, or that he is liable or responsible for any payments or disbursements made by his said attorney at law, unless the same was made by his express authority.”
The decree of the court in regard to this exception is plainly right. It is, “ that the 5th of said exceptions last named be overruled, so far as the same pertains to the collections made by the attorney of said administrator, and so far as the same pertains to the disbursements made by said attorney, were made by authority or approval or were properly made, they shall be allowed, and when made without such authority or approval, or were improper to be made, they should be disallowed.”
“6th. Because said commissioner recites in said report (page 6) that H. R. Garden paid this exceptant $875 this year, meaning apparently 1875, when it appears from the stated account of said Garden with this exceptant that the said attorney has paid over to him nothing this year, and only the sum of $217 during the year 1874.”
“7th. Because the said commissioner reports the debt of $8,331.67, in favor of Thos. N. Latham, as due in the aggregate and not in detail, and there is not sufficient evidence to sustain said charge, and especially no evidence to sustain the charge of $3,500 as of the 30th November, 1862, as contained in a memorandum filed herein as of the 1st January, 1875.”
There is nothing in the record before the court to show that the circuit court committed any error in overruling the said 6th and 7th exceptions, or either of them. In regard to the remaining exceptions, referred to in the said *509 decree of the 24th of December, 1875—to wit: the 8th, , 9th, 10th and 14th, which were overruled by the said decree, and the l-2th, 13th and 15th, which were to said commissioner by said decree—it is unnecessary to insert them here, or to say more than that it does not appear from the record that the circuit court erred in regard to them or any of them. J
The fourth and last decree complained of in the first of the said two appeals is the decree of the 31st of December, 1875, whereby the said J. C. Gibson was required to deposit in the First National Bank of Alexandria, to the credit of these causes, the sum of $2,768.51, being the amount appearing to be in his hands as receiver of the assets of Shackelford & Spilman in the said causes, after deducting the amount claimed by said receiver, J. C. Gibson, for his fees, &cq the amount so claimed being a matter reserved for future consideration.
It is unnecessary here to take any further notice of the said decree, or of the assignment of errors therein in the petition of appeal therefrom, as the said decree requiring the said sum of $2,768.51 to be deposited in bank as aforesaid, with which the said receiver had failed to comply, was rescinded by the decree made in these causes on the 22d of April, 1876.
Having sufficiently noticed the assignments of error in the petition for the first appeal obtained in these cases, we will now notice those contained in the petition for the latter of the two appeals obtained in the said cases—to wit: the appeal from the two decrees of the 17th and 22d days of April, 1876.
In the petition for the last mentioned appeal there are seven assignments of error by the appellant, J. C. Gibson, which will be briefly noticed in the order in which they are made. They are as follows :
1st. In overruling his exceptions to Commissioner Shepperd’s report, numbered 1, 2, 3, 4, 6, 7.
*510 2. In requiring him to give a new bond as receiver.
3. In removing him as receiver as aforesaid.
4. In appointing A. D. Payne as a receiver in his stead
5. In requiring him to pay to said Payne, receiver as aforesaid, the sum of $5,384.84, with interest on $4,685.82, part thereof, from 26th March, 1876.
6. In appointing John M. Forbes a commissioner to sue for and collect said last mentioned sum of him.
7. In refusing to allow him any fees, &c., whatever, for his professional services as an attorney and counsellor at law.
1. As to the first of these assignments of error: “In overruling his exceptions to Commissioner Shepperd’s report, numbered 1, 2, 3, 4, 6, 7.” It is sufficient to say that there is nothing in the record before the court to show that the circuit court erred in overruling the said exceptions or any or either of them.
2. As to the second of these assignments: “In requiring him to give a new bond as receiver.” We think that the security on the old bond was insufficient, and the circuit court did not err in this respect. If this court would reverse a decree of an inferior court for. requiring a new bond in such a case, it would only be done where there was palpable error in making such requisition. Certainly there was no such error in this case if it were not perfectly proper to make the requisition.
3. As to the third of these assignments : “In removing him as receiver as aforesaid.” If it was proper in the circuit court to require him to give a new bond as receiver, it follows, as a necessary consequence, that it was proper for said court to remove him as receiver in the event of his failure to comply with such a requisition. As the propriety of the former act will be inferred, at least in the absence of palpable evidence to the contrary, it follows, necessarily, that the propriety of the. latter act will be also inferred in such a case.
*511 4. As to the fourth of these assignments: “ In appointing A. D. Payne as a receiver in his stead.” There is nothing in the record tending to show the impropriety of appointment.
5. As to the fifth of these assignments: “In requiring him to pay to said Payne, receiver as aforesaid, the sum of $5,384.84, with interest on $4,685.82, part thereof, from 26th March, 1876.” When the said requisition was made, the said sum of $5,384.84 was the amount of the partnership fund of Shackelford & Spilman then in the hands of the receiver, J. C. Gibson; and A. D. Payne being appointed receiver in the place of J. C. Gibson, who was removed from the said office, the fund of the partnership then in the hands of the old receiver was ordered to be paid by him to the new receiver. This transfer of the partnership fund from the hands of the old to those of the new receiver was a proper act, and the legitimate, if not necessary, consequence of the change of the receivership. The old receiver, J. C. Gibson, had a large claim against the fund in his hands, as such, for professional services claimed to have been rendered by him in regard to the partnership fund during the existence of his receivership. It was decreed by the circuit court in these two causes, on the 31st of December, 1875, that said J. C. Gibson, theretofore appointed receiver in the first of said two causes— to wit: that of B. H. Shackelford’s adm’r v. R. B. Shackelford & al.—“do pay into the First National Bank of Alexandria, to the credit of said two causes, the sum of $2,768.51, being the amount appearing in his hands by the supplemental report of Commissioner Shepperd, filed on 16th September, 1875, after deducting the amount claimed by said receiver, J. C. Gibson, for his fees, &c., reserving for future consideration the amount so claimed, and that said receiver do also pay into said bank any moneys received by him as such receiver since the period embraced in the said report of Commissioner Shepperd, and also any • *512 moneys he may hereafter collect as such receiver, and file , , among the papers in this cause the certificate of said bank of such deposits, and that said J. C. Gibson do settle be-^°re ^-as*er Commissioner Shepperd a further account of his actings and doings as receiver aforesaid, and that said commissi°ner do ascertain and make report, whether the bond of said receiver, filed in said first named cause, is a good and sufficient bond to protect the interests of the parties who may be entitled to the funds that have come or may come into the hands of said receiver, and that said J. C. Gibson be summoned to appear here on the 2d day of the next term of this court, to show cause why he should not be required to execute a new bond, with good and sufficient sureties therein, as receiver in said cause.”
On the 17th of April, 1876, the said two causes came on to be further heard, upon the papers formerly read and sundry other papers, and the exceptions therein named, and upon the rule against said J. C. Gibson, receiver of the assets of Shackelford & Spilman, &c., to show cause why he should not be required to execute a new bond as such receiver: on consideration whereof the court overruled several of the said exceptions, and recomniitted others to said commissioner for further enquiry and investigation, and further decreed that J. C. Gibson, receiver as aforesaid, be required, on or before the 22d of April, 1876, that being the last day of the then present term of the said circuit court, “ to execute a new bond as such receiver, with good and sufficient surety, in the penalty of $20,000, with cbnditions as are in his former bond.”
On the 22d of April, 1876, the said two causes came on to be further heard upon the papers formerly read: on consideration whereof the court confirmed “ so much of the report of Commissioner Shepperd, filed on the 1st of April, 1876, in the first named cause, as ascertains the total amount due by J. C. Gibson as receiver of the assets of .the firm of Shackelford & Spilman to be $5,384.84 on the *513 26th of March, 1876, with interest on $4,685.82, part thereof, from 26th March, 1876; and the court, having by a decree entered on the — day of--, ordered said J. C. Gibson, receiver as aforesaid, to pay into the First National Bank at Alexandria, to the credit of these causes, the sum of $2,768.75, and other moneys in said decree specified, and to file among the papers in these causes certificates of said bank of said deposits, with which said order said Gibson, receiver as aforesaid, hath failed to comply, and as the said sum of $2,768.75 is part of the said amount of $5,384.84, the order directing said payments into said bank is hereby rescinded; and the court” decreed “ that said J. C. Gibson, receiver as aforesaid, do pay unto A. D. Payne, who is appointed receiver of said assets of Shackelford & Spilman by a subsequent provision in this decree, the aforesaid sum of $5,834.84, with interest on $4,685.82, part thereof, from 26th March, 1876, until paid ; and the said J. C. Gibson, receiver as aforesaid, having been required by the decree entered on the — day of this term of the court, to execute a new bond as such receiver, on or before this day, and having failed so to do, the court” decreed that the said J. C. Gibson be removed and displaced as receiver aforesaid, and his powers as such be annulled and revoked. And the court further decreed that Alexander D. Payne be appointed in the stead of said J. C. Gibson, receiver of the assets of said firm of Shackelford & Spilman, and of the amount decreed above to be paid by said Gibson, receiver, to him; and that said Gibson, heretofore receiver as aforesaid, do deliver to said Payne, “receiver hereby appointed, all the choses in action, &c., belonging to said firm and pertaining to their business, &c. But before said Payne, receiver as aforesaid, should discharge any duties as such, he was required by said decree to execute bond, with good security, payable to the commonwealth of Virginia, in the penalty of $15,000, conditioned for the faithful discharge of his *514 duties as such receiver. And said A. 1). Payne was directed to file among the papers in said two causes a state-? - ment of assets he may receive under said decree, and to ' proceed to collect, with reasonable diligence, all debts due to said firm, and was authorized to employ counsel to aid him therein, &c., and to present an account of his doings as receiver to a master commissioner of the court in said causes. And unless the said Gibson, receiver as aforesaid, should within 60 days from the rising of the said circuit court, pay to said Payne, appointed receiver in the stead of said Gibson, then the said court by said decree, appointed John M. Forbes a commissioner, who was ordered to withdraw the receiver’s bond executed by said Gibson and his sureties therein, and filed in said causes, and proceed to collect the said sum and interest above decreed to be paid by said Gibson, heretofore receiver, by such legal proceedings as he may deem proper, and by suit upon his bond as receiver, and report to the court. But before said Forbes shall receive any money under said decree, he was required to execute bond, with good security, in the penalty of $6,000, conditioned for the faithful performance of his duties under said decree; and leave was reserved to any party interested to apply for such further relief by way of the enforcement of said decree as may be determined to be proper and lawful.”
Thus it appears that the said 5th assignment of error is mot well founded.
6. As to the sixth of the said assignments: “In appointing John M. Forbes a commissioner to sue for and collect said last mentioned sum of him,” said Gibson. There is no good ground of objection to this part of the •decree aforesaid. If the former receiver shall fail to make payment of the fund with which he is chargeable as such to the present receiver, then an action at law will no doubt become necessary against the former receiver and his sureties on his bond as such, and that action must be brought *515 by an attorney at law. The commissioner appointed in this case to sue for and collect the amount of said bond is such an attorney, and the presumption is (what we all in fact know as a matter dehors the record) that he is well qualified to perform that duty and trustworthy in every respect. Besides, he is required by the decree appointing him commissioner as aforesaid, before receiving any money under said decree, to execute bond, with good security, conditioned for the faithful performance of his duties under the said decree.
7. As to the seventh and last of the said assignments : In refusing to allow him any fees, &e., whatever for his (J. C. Gibson’s) professional services as an attorney and counsellor at law.” Now, this matter was expressly reserved for future consideration by the said circuit court in the said decree of the 31st of December, 1875, and there is nothing in the record to show that it has since been so considered. Whatever he may be entitled to on account of said claim may be asserted hereafter against the assets of the said partnership of Shackelford & Spilman. It was proper for the circuit court to take care of those assets, and keep them in the hands of a receiver bound by bond, with good security, until it can be ascertained who are entitled to them, and in what proportions, and to distribute and apply them accordingly.
Upon the whole, the court is of opinion that there is no error in the decrees appealed from, and that the same ought therefore to be affirmed.
The decree was as follows :
The court is of opinion, for reasons stated in writing and filed with the record, that there is no error in any of the decrees appealed from in this case, to wit: the decrees of the 25th day of April, 1874; the 22d day of Septem *516 ]jer 1875: the 24th day of December, 1875, and the 31st day of December, 1875; to which four decrees an appeal allowed by a judge of this court on the 26th day of 1877; and the 17th day of April, 1876, and the 22d day of April, 1876; to which last named two decrees an aPPea^ was allowed by a judge of this court on the 5th day of March, 1878—which two appeals are embraced in and constitute this case. But the court is of opinion that there is not in the said decrees, or any of them, any decision of the said circuit court in regard to the claim of the receiver, J. C. Gibson, for his fees, &c.; the said court having, by its said decree of the 31st day of December, 1875, reserved for future consideration the amount so claimed; which question remains undecided and subject to the decision of the said circuit court, notwithstanding the said decree of the 22d day of April, 1876, whereby the said court confirmed so much of the report of Commissioner Shepperd, filed on the 1st of April, 1876, as ascertains the total amount due by J. C. Gibson as receiver of the assets of the firm of Shackelford & Spilman, to be $5,384.84 on 26th March, 1876, with interest on $4,685.82, part thereof, from 26th March, 1876; and decreed that said J. C. Gibson, receiver as aforesaid, do pay unto A. D. Payne, who is appointed receiver of said assets of Shackelford & Spilman by a subsequent provision in said decree, the aforesaid sum of $5,384.84, with .interest on $4,685.82, part thereof, from 26th March, 1876, until paid; the said sum of $5,-384.84 being the whole amount then due by said Receiver Gibson, without making any deduction for his fees, &c., as aforesaid.
Therefore, it is decreed and ordered that the said decrees appealed from in this case, subject to the explanation aforesaid, and without prejudice to the right of the said J. C. Gibson to recover any amount to which he may hereafter be held to be entitled for his fees, &c., as aforesaid, be af *517 firmed, and that the appellant J. C. Gibson pay to the appellee E. M. Spilman thirty dollars damages and his costs by him about his defence in this court expended.
Which is ordered to be certified to the said circuit court.
Decrees affirmed.